1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   ANITA KHURANA, et al.,                Case No. 4:24-cv-01741-KAW
8                   Plaintiffs,           **ORDER GRANTING IN PART AND
                                          DENYING IN PART DEFENDANT
9           v.                            CENLAR FSB'S MOTION TO DISMISS**
10  CLEAR RECON CORP, et al.,             Re: Dkt. No. 21
11                  Defendants.
12

13          On April 4, 2024, Defendant Cenlar FSB field a motion to dismiss.  Thereafter, the parties

14  engaged in significant mediation, which included the submission of a loan modification

15  application.  On November 4, 2024, the parties informed the Court that the case did not settle.

16          Upon review of the moving papers, the Court finds this matter suitable for resolution

17  without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below,

18  GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss.

19                         I.    BACKGROUND

20          On or around September 27, 2001, Plaintiffs purchased a single-family home, located at

21  1114 S Chanterella Dr. San Ramon, CA 94582, and have since resided on the Property. (Compl.,

22  Dkt. No. 1-1 ¶¶ 11-12.)

23          On or about October 25, 2006, Plaintiffs obtained a loan modification in the amount of

24  $1,080,000.00 (the "Loan") from Argent Mortgage Company, LLC ("Argent"), the repayment of

25  which was secured by a first-position Deed of Trust ("Argent DOT") recorded against the

26  Property. (*See* Argent DOT and Loan Modification, Def.'s Req. for Judicial Notice, Dkt. No. 21-1,

27  Ex. 1.)  Defendant Clear Recon was appointed trustee pursuant to the Deed of Trust recorded on

28  November 8, 2006. (Compl. ¶ 13.)  The Argent DOT was assigned several times, ultimately being

United States District Court
Northern District of California

1    assigned to U.S. Bank. (*See* U.S. Bank Assignment of Argent Deed of Trust ("ADOT"), Def.'s

2    RJN, Ex. 2.)

3        On or about July 21, 2022, Plaintiffs tried to contact Citigroup Management regarding their

4    loan after realizing that Plaintiffs' online portal on Citigroup's website was no longer active.

5    (Compl. ¶ 15.) Plaintiffs were never given notice that their loan was obtained by a new servicer.

6    *Id.*

7        On or about July 31, 2022, Plaintiffs contacted Defendant Cenlar to find more information

8    about the loan on the Property. (Compl. ¶ 16.)  Defendant Cenlar sent Plaintiffs an email and

9    verification that the loan had been transferred from Citigroup to Cenlar. *Id.*

10       On or about August 1, 2022, Cenlar gave Plaintiffs a loan number. (Compl. ¶ 17.)

11   Plaintiffs continued to try to contact Cenlar to receive more information regarding the loan on the

12   Property. *Id.*  Plaintiffs were advised by a Cenlar representative to look out for "important papers"

13   that would be sent in the mail from Cenlar. *Id.*  The representative was very vague when Plaintiffs

14   asked about the account information and details on the loan. *Id.*

15       On or about October 3, 2022, Plaintiffs received a loan statement in the mail from Cenlar

16   detailing the loan amount on the account. (Compl. ¶ 18.) The loan statement also contained

17   contact information for payment and further correspondence with the bank. However, the contact

18   information provided was a P.O. Box and a Fax number, and it did not provide a phone number to

19   speak to a representative. *Id.*

20       From August 2, 2023 to January 4, 2024, Plaintiffs sent monthly letters to the provided

21   P.O. Box requesting a loan modification application and a single point of contact. (Compl. ¶ 19.)

22   Plaintiffs never received a reply to any letter sent requesting a loan modification application.

23   (Compl. ¶ 20.)  Instead, Plaintiffs have only received RoboCalls from Cenlar detailing the amount

24   owed to Cenlar. *Id.*  These calls come at random points throughout the day and contain no

25   information about how to contact a real representative from Cenlar. *Id.*

26       Plaintiffs defaulted on their repayment obligations owing on the Argent DOT, which

27   caused Defendants to record a Notice of Default against the Property. (*See* Notice of Default,

28   Def.'s RJN, Ex. 3.)  After Plaintiffs failed to cure the arrearages owed in connection with the

United States District Court
Northern District of California

1  Argent DOT, a Notice of Trustee's Sale was recorded against the Property. (*See* Notice of

2  Trustee's Sale, Def.'s RJN, Ex. 4.)

3      On January 24, 2024, Plaintiffs filed the instant action in Contra Costa County Superior

4  Court. On March 20, 2024, Defendant Cenlar removed this action to federal court. (Dkt. No. 1.)

5      On April 4, 2024, Defendant Cenlar filed a motion to dismiss. (Def.'s Mot., Dkt. No. 21.)

6  On April 18, 2024, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 22.) On April 25, 2024,

7  Defendant Cenlar filed a reply. (Def.'s Reply, Dkt. No. 27.)

8      On April 22, 2024, the case was referred for an early ADR assessment. (Dkt. No. 24.) On

9  May 10, 2024, the case was referred to mediation. (Dkt. No. 32.)

10     On May 13, 2024, this case was referred to the undersigned for all purposes. (Dkt. No. 33.)

11  In that same order, the May 15, 2024 trustee sale was vacated, as was the hearing on the pending

12  motion for preliminary injunction. *Id.* The parties engaged in a several months-long mediation,

13  which included the submission of a loan modification application. (*See* Dkt. Nos. 42, 51.)

14     On November 4, 2024, the parties informed the Court that the case did not settle, and that

15  they were prepared to continue with the lawsuit. (Dkt. No. 54.)

16              **II.    LEGAL STANDARD**

17      **A.    Motion to Dismiss**

18      Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

19  on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule

20  12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250

21  F.3d 729, 732 (9th Cir. 2001).

22      In considering such a motion, a court must "accept as true all of the factual allegations

23  contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

24  omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

25  there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

26  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

27  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation

28  marks omitted).

United States District Court
Northern District of California

1    A claim is plausible on its face when a plaintiff "pleads factual content that allows the

2    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3    *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more

4    than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

5    do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of

6    a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also*

7    *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of

8    law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a

9    claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more

10   than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts

11   that are merely consistent with a defendant's liability, it stops short of the line between possibility

12   and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

13   557) (internal citations omitted).

14          Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no

15   request to amend is made "unless it determines that the pleading could not possibly be cured by

16   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

17   omitted).

18          **B.    Request for Judicial Notice**

19          Generally, a district court may not consider any material beyond the pleadings in ruling on

20   a motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th

21   Cir. 2001).  A district court may take notice of facts not subject to reasonable dispute that are

22   "capable of accurate and ready determination by resort to sources whose accuracy cannot

23   reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331,

24   333 (9th Cir. 1993).  "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250

25   F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may

26   also consider "documents whose contents are alleged in a complaint and whose authenticity no

27   party questions, but which are not physically attached to the pleading" without converting a

28   motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*,

4

14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III.    DISCUSSION

#### A.    Request for Judicial Notice

As a preliminary matter, Defendant asks the Court to take judicial notice of four documents in connection with the motion to dismiss: 1) Deed of Trust and Loan Modification Agreement recorded on November 8, 2006, in the Contra Costa County Recorder's Office bearing document number 2006-0358508-00 and 2006-0358509-00; 2) Assignment of Deed of Trust recorded on October 14, 2014, in the Contra Costa County Recorder's Office bearing document number 2014-0176781-00; 3) Notice of Default and Election to Sell Under Deed of Trust recorded on May 8, 2015, in the Contra Costa County Recorder's Office bearing document number 2015-0090519-00; and 4) Notice of Trustee's Sale recorded on December 26, 2023, in the Contra Costa County Recorder's Office bearing document number 2023-0135397. (Def.'s RJN, Dkt. No. 21-1.)

Plaintiffs do not oppose the request for judicial notice.  Exhibits 1 through 4 are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

Accordingly, the Court GRANTS Defendant's request for judicial notice.

#### B.    Motion to Dismiss

##### i.    Cal. Civ. Code § 2923.7

Plaintiffs' first cause of action is for violation of California Civil Code § 2923.7. (Compl. ¶¶ 23-29.)  This provision of the Homeowner Bill of Rights ("HBOR") requires that the mortgage servicer assign a single point of contact ("SPOC") when a borrower requests a foreclosure prevention alternative, and that the borrower be provided "one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). Subsection (b) sets

United States District Court
Northern District of California

5

forth the tasks that the SPOC is responsible to perform:

> (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.
>
> (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
>
> (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
>
> (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
>
> (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7(b). "A material violation is one that affected the borrower's loan obligations, disrupted the borrower's loan-modification process, or otherwise harmed the borrower." *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 304, 293 Cal. Rptr. 3d 417, 449 (2022).

Defendant moves to dismiss this claim on the grounds that "Plaintiffs have not pled that a loan modification application was submitted to Cenlar and Plaintiffs haves not pled sufficient facts to show that Defendants materially violated California Civil Code § 2923.7." (Def.'s Mot. at 10.)

In opposition, Plaintiffs argue that "they were not given an opportunity to apply after their multiple requests for an application went ignored" and that they would have been able to submit a completed application if they had been assigned a single point of contact. (Pls.' Opp'n at 4.) This contradicts the complaint, which alleges that Cenlar failed to assign Plaintiffs a single point of contact upon their submission of an application for a loan modification. (Compl. ¶ 26.) In essence, Plaintiffs' position is that the alleged violation interfered with their ability to be reviewed for all foreclosure prevention alternatives. (Pls.' Opp'n at 6.) Moreover, since this motion's briefing, Plaintiffs have submitted a loan modification application that was presumably complete. As a result, the Court questions whether at least a portion of this claim has been mooted or otherwise limited in terms of damages.

Nonetheless, Plaintiffs need to clearly allege a violation against Cenlar—including

allegations of materiality—rather than against nonparty Rushmore Servicing.[1] (*See* Compl. ¶ 28.)

Accordingly, the Court dismisses this claim with leave to amend.

### ii.    Violation of 12 C.F.R. § 1024.38

The second cause of action is for violation of 12 C.F.R. § 1024.38. (Compl. ¶¶ 30-36.) This Real Estate Settlement Procedures Act ("RESPA") provision requires servicers to "(i) [p]rovide accurate information regarding loss mitigation options available to a borrower from the owner or assignee of the borrower's mortgage loan;" and to "(ii) [i]dentify with specificity all loss mitigation options for which borrowers may be eligible pursuant to any requirements established by an owner or assignee of the borrower's mortgage loan…." 12 C.F.R. § 1024.38(b)(2).

Defendant moves to dismiss this claim on the grounds that this provision of RESPA does not contain a private cause of action. (Def.'s Mot. at 12.)

The Consumer Financial Protection Bureau ("CFPB") promulgated the Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act ("Regulation X"), to exclude a private cause of action. 78 Fed. Reg. 10,696, 10,817-18 (Feb. 14, 2013) ("[B]orrowers do not… have a private right of action under the Bureau's rules to enforce the requirements set forth in § 1024.38 or to enforce the terms of an agreement between a servicer and an owner or assignee of a mortgage loan with respect to the evaluation of borrowers for loss mitigation options.")  As a result, districts courts across the country have found that there is no private enforcement of this provision. *See Mohamed v. Nationstar Mortg., LLC,* No. 20-CV-0216(EK)(LB), 2024 WL 4132351, at *6 (E.D.N.Y. Sept. 10, 2024) (collecting cases).  In opposition, and without providing any legal authority, Plaintiffs contend that a private right of action exists to enforce this provision pursuant to 12 U.S.C. § 2605(f). (Pls.' Opp'n at 9.)  This is contrary to Regulation X, and the Court finds that there is no private right of action to enforce this RESPA provision.

Accordingly, the Court dismisses the second cause of action with prejudice, because § 1024.38 does not create a private cause of action.

///

---

[1] The Court presumes that the complaint's single reference to Rushmore Servicing was in error.

### iii. Violation of 12 C.F.R. § 1024.33 and Cal. Civ. Code § 2937

The third cause of action is for violation of 12 C.F.R. § 1024.33 and California Civil Code § 2937 for failure to timely provide notice of the transfer of the loan servicing. (Compl. ¶¶ 37-42.) Defendant moves to dismiss this claim on the grounds that it is preempted by RESPA, because RESPA preempts any state law requiring notice to the borrower of a service transfer. (Def.'s Mot. at 14.)

RESPA provides that compliance with that section preempts "[a]ny State law requiring notice to the borrower at the time of application or at the time of transfer of servicing of the loan is preempted, and there shall be no additional borrower disclosure requirements." 12 C.F.R. § 1024.33(d).

In opposition, Plaintiffs argue that they never received any notice, so Defendant violated both RESPA and state law, so state law is not preempted. (Pls.' Opp'n at 6-7.) Furthermore, while Plaintiffs concede that they received a verification letter from Cenlar after the transfer, they state that they never received the RESPA-required notice 15 days before the effective date of the transfer. (Pls.' Opp'n at 7.) Plaintiffs further contend that Cenlar did not send them any correspondence or monthly statements between July 2022 and October 2022. (Compl. ¶ 40.) Plaintiffs claim that they were damaged during that time because they had no knowledge of the amount due on the loan; the arrears were accruing interest; and the loan was in a state of default that threatened their home. (Pls.' Opp'n at 7.) As currently pled, the complaint sufficiently alleges that Defendants failed to comply with RESPA, so there is no preemption. Thus, Plaintiffs adequately allege violations under both RESPA and Civil Code § 2937.

Accordingly, the motion is denied as to this cause of action.

### iv. UCL Claim

The fourth cause of action is for violation of Business and Professions Code § 17200. (Compl. ¶¶ 43-60.) The parties agree that this claim is derivative in nature. (Def.'s Mot. at 15; Pls.' Opp'n at 7.) A derivative UCL claim must only be dismissed if the underlying claims are also subject to dismissal. *See Avila v. Bank of Am.,* No. 17-CV-00222-HSG, 2017 WL 4168534, at *5 (N.D. Cal. Sept. 20, 2017) (dismissing UCL claim to the extent it is derivative of other claim

dismissed in same order).  To state a UCL claim, Plaintiffs must adequately "plead a causal link between [their] economic injury, the impending nonjudicial foreclosure of [their] home, and the … unlawful acts allegedly committed by Defendants." *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523, 156 Cal. Rptr. 3d 912, 933 (2013), as modified (June 12, 2013), and disapproved on other grounds by *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 365 P.3d 845 (2016) (citing Cal. Bus. & Prof. Code, § 17204).  Here, Plaintiffs allege that Defendants' conduct has jeopardized their interests in the subject property, which they are at risk of losing to foreclosure, and that they have suffered other economic and noneconomic damages as a result. (*See* Compl. ¶¶ 56-57.)  Since the parties agree that this claim is derivative of the first three causes of action, and two of the bases for the unlawful and unfair business practices have been properly alleged, Plaintiffs have sufficiently stated a UCL claim.[2] *See* discussion, *supra,* Parts III.B.i, iii.

Accordingly, the motion is denied as to the fourth cause of action.

## IV.    CONCLUSION

For the reasons set forth above, Defendant Cenlar FSB's motion to dismiss is GRANTED IN PART AND DENIED IN PART.  Specifically, the first cause of action is dismissed with leave to amend, and the second cause of action is dismissed with prejudice.  The motion is denied in all other respects.

Plaintiffs shall file a first amended complaint within 21 days of this order.

IT IS SO ORDERED.

Dated: March 20, 2025

KANDIS A. WESTMORE
United States Magistrate Judge

---

[2] Given the several yearslong delinquency prior to Cenlar becoming their servicer, to ultimately prevail, Plaintiffs will need to explain how they were injured by Cenlar's actions rather than by not making mortgage payments for 10+ years. The issue of causation, however, is not to be decided at the pleadings stage.