UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANITA KHURANA, et al.,

    Plaintiffs,

  v.

CLEAR RECON CORP, et al.,

    Defendants.

Case No. 4:24-cv-01741-KAW

**ORDER GRANTING CENLAR'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 80

On February 26, 2026, Defendant Cenlar FSB ("Defendant" or "Cenlar") filed a motion for summary judgment. (Def.'s Mot. Dkt. No. 80.)

On April 2, 2026, the Court held a hearing, and, based on the arguments presented in the briefing and at oral argument, GRANTS the motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

On or around September 27, 2001, Plaintiffs purchased a single-family home, located at 1114 S. Chanterella Dr. San Ramon, CA 94582, and have since resided on the Property.

On or about October 26, 2006, Plaintiffs obtained a loan modification in the amount of $1,080,000.00 (the "Loan") from Argent Mortgage Company, LLC ("Argent"), the repayment of which was secured by a first-position Deed of Trust ("Argent DOT") recorded against the Property. (*See* Decl. of Pei-i Vernitsky, "Vernitsky Decl.," Dkt. No. 82 ¶ 5, Ex. 1.)

On or about November 8, 2006, a Modification Agreement was recorded in the Contra Costa County Recorder's Office. (Vernitsky Decl. ¶ 6, Ex. 3.) The Modification Agreement reflects that the Subject Note and Subject Deed of Trust were modified only to the extent of correcting that the Subject Property is located in the County of Contra Costa. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

Thereafter, the Subject Deed of Trust was assigned multiple times. (Vernitsky Decl. ¶ 7, Ex. 4.) Ultimately, the Subject Deed of Trust was assigned to Citigroup Mortgage Loan Trust Inc. Asset-Backed Pass-Through Certificates, Series 2007-AMC2, U.S. Bank National Association, as Trustee ("U.S. Bank"), the current owner of record of the Subject Loan. (Vernitsky Decl. ¶ 7, Ex. 4.) On or about October 14, 2014, an Assignment of Deed of Trust was recorded in the Contra Costa County Recorder's Office, reflecting the assignment of the Subject Deed of Trust to U.S. Bank. *Id.*

Plaintiffs defaulted on their payment obligations under the Subject Note and the Subject Deed of Trust and have been past due on the Subject Loan since June 2009. (Vernitsky Decl. ¶¶ 8, 14. Ex. 7.) Plaintiffs have not made a single payment since that date. *See id.*

On or about September 29, 2009, CitiMortgage (the then-servicer of the Subject Loan) received a fax transmission—including cover sheet, letter and enclosure ("Special Power of Attorney")—from attorney Jacqueline C. Fagerlin of the Cardoza Law Offices regarding the Subject Loan. (Vernitsky Decl. ¶ 9, Ex. 5.) The cover sheet, in the comments section, referenced the attached letter as a "Cease and Desist Letter." *Id.* at CEN 001228. In the cover letter to CitiMortgage, Ms. Fagerlin wrote:

> Please be advised we represent Mahesh and Anita Khurana in the above referenced loan modification. Please forward all communication to [the Cardoza Law Offices] including, but not limited to, phone calls, correspondences, and emails. Enclosed please find our Power of Attorney previously submitted on July 22, 2009. Please do not contact our client in any way from this point forward. Thank you for your cooperation.

(Vernitsky Decl. ¶ 9, Ex. 5 at CEN 001229 (emphasis added).)

The "Special Power of Attorney" which was enclosed with the letter was signed by the Plaintiffs and notarized on July 21, 2009. (Vernitsky Decl. ¶ 10; Ex. 5; Def.'s Anita Khurana Dep., "Anita Dep.," Decl. of Libby Wong, Dkt. No. 83 ¶ 11, Ex. 21 at 59:1-4.) The "Special Power of Attorney" states:

> We, ANITA KHURANA and MAHESH KHURANA, residing at 1114 South Chanterella Drive, San Ramon, California hereby appoint The Cardoza Law Offices, Inc. and its agents, Michael Cardoza, Esq., Jacqueline Fagerlin, Esq., Tiffany O'Connor, Esq., Bonnie Landles-Dowling, and Cory Lynch as our Attorney-In-Fact, to act in our place

2

to negotiate with our mortgage holder, to perform any act necessary to negotiate our mortgage, and to conduct any business with any banking or financial institution with respect to our mortgage… This power of attorney will become effective immediately. This Power of Attorney may be revoked by us at any time by providing written notice to our Attorney-In-Fact.

(Vernitsky Decl. ¶ 10; Ex. 5 at CEN 001230.)

On or about September 30, 2009, in response to the aforementioned September 29, 2009 letter and "Special Power of Attorney," CitiMortgage sent a letter to Plaintiffs, c/o Cardoza Law Offices, Inc., stating:

We are writing to inform you that we received your request to appoint a Power of Attorney (POA). We have updated your mortgage account to reflect Cardoza Law Offices, Inc as Power of Attorney.

This authorization will remain in effect until you revoke the POA, or until the stated expiration date on the POA. To revoke the POA, we must receive your written signed notification. You may mail or fax this notification to the address or fax number below:

CitiMortgage, Inc.
Attn: Research Services
P.O. Box 9438
Gaithersburg, MD 20898-9438
Fax Number: 1-866-675-5772

We have also updated your mailing address to:

CARDOZA LAW OFFICES, INC.
1220 OAKLAND BLVD., SUITE 200
WALNUT CREEK CA 94596.

(Vernitsky Decl. ¶ 11, Ex. 6 (emphasis added).)  Ultimately, Plaintiffs did not retain Cardoza Law Offices, but they did not realize that the mailing address for Plaintiffs on file at CitiMorgage had been changed to the address for Cardoza Law Offices. (Decl. of Anita Khurana, "Anita Decl.," Dkt. No. 88-2 ¶ 10.)

To date, there is no record of CitiMortgage or Cenlar receiving any written signed notification from Plaintiffs either revoking the Special Power of Attorney or requesting that Plaintiffs' mailing address of record be changed from the Cardoza Law Offices, Inc.'s address to a different address. (Vernitsky Decl. ¶ 12.)  As a result, since September 30, 2009, the mailing address of record for Plaintiffs has remained the Cardoza Law Offices, Inc.'s address. (Vernitsky Decl. ¶ 13.)  When Cardoza's Law Offices, Inc. later changed its mailing address to 1407 Oakland Blvd., Suite 200, Walnut Creek, CA 94596, the mailing address for Plaintiffs was updated

United States District Court
Northern District of California

3

accordingly. (Vernitsky Decl., ¶ 13, fn. 1.)

On or about May 8, 2015, a Notice of Default was recorded against the Subject Property. (Vernitsky Decl. ¶ 14, Ex. 7.)  The Notice of Default reflects that Plaintiffs have been past due on their payments for the Subject Loan since June 1, 2009 and that the arrears on the Subject Loan, as of May 5, 2015, was approximately $546,287.94. *Id.*

Between September 2015 and January 2017, Plaintiffs filed at least two bankruptcy cases in an attempt to postpone a foreclosure sale on the Subject Property. (Vernitsky Decl. ¶ 15; Def.'s Req. for Judicial Notice,[1] "Def.'s RJN," Dkt. No. 81, Exs. E & F.)  Both bankruptcies were later dismissed or closed in 2017. *Ids.*

In 2016, Plaintiffs experienced a change in financial circumstances that they believed made them potentially eligible for a loan modification. (Anita Decl. ¶ 11.) As such, Plaintiffs began applying for a loan modification with CitiMortgage. *Id.*  Unfortunately, Plaintiffs experienced significant difficulties navigating the loan modification process with CitiMortgage, which resulted in Plaintiffs filing a lawsuit against CitiMortgage in 2017. (Anita Decl. ¶ 12.)  On or about January 11, 2017, Plaintiffs filed the complaint against their then-servicer, CitiMortgage, in Contra Costa County Superior Court, entitled *Mahesh Khurana, et al. v. CitiMortgage, Inc.*, Case No. C17-00101, seeking among other things, injunctive relief to prevent a foreclosure sale of the Subject Property. (Vernitsky Decl. ¶ 16; Def.'s RJN ¶ 7, Ex. G.)

On March 15, 2019, CitiMortgage and Cenlar sent (by first-class mail) a joint notice to Plaintiffs advising that, effective April 1, 2019, the servicing of the Subject Loan would be transferred from CitiMortgage to Cenlar. (Vernitsky Decl. ¶ 17, Ex. 8.)  The notice of servicing transfer was sent to Plaintiffs' mailing address of record, which was to the Cardoza Law Offices, Inc., 1407 Oakland Blvd. Suite 200, Walnut Creek, CA. *Id.*

Plaintiffs were unaware that the servicing rights were transferred to Cenlar, because the

---

[1] The Court grants the request for judicial notice (Dkt. No. 81). Exhibits E, F, G are court records and an unpublished California appellate opinion reported on Westlaw. The remaining exhibits are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

United States District Court
Northern District of California

notice was sent to the Cardoza Law Offices. (Anita Decl. ¶¶ 13-14.) The Notice of Transfer sent to the address for Cardoza Law Offices was eventually returned as undeliverable. (Dep. of Raymond Crawford, "Crawford Dep.," Decl. of Sarah Shapero, "Shapero Decl.," Dkt. No. 88-1, Ex. B at 14:2-15:19[2].) No notice was ever sent to the Property address. *Id.* The total amount due on the Loan as of June 2019 was $1,875,028.11. (Shapero Decl. ¶ 4, Ex. C.)

By the time that the loan servicing was transferred to Cenlar, Plaintiffs had already been delinquent on the Subject Loan for almost 10 years. (Vernitsky Decl. ¶ 18.)

After the loan servicing was transferred to Cenlar, Cenlar sent numerous notices and letters to Plaintiffs at their mailing address of record. (Vernitsky Decl. ¶ 19, Exs. 9 & 10.) In addition, Cenlar also regularly sent monthly statements to Plaintiffs at their mailing address of record. (Vernitsky Decl. ¶ 20, Ex. 11.) This correspondence was often returned as undeliverable. (Crawford Dep. at 23-27.)

In June 2020, CitiMortgage obtained summary judgment in its favor in the Superior Court action, which the California Court of Appeal affirmed on appeal in June 2022. (Vernitsky Decl. ¶ 16; Def.'s RJN, Ex. G; Anita Decl. ¶ 17.) Throughout the litigation, Plaintiffs were never informed that the servicing rights for the Subject Loan had been transferred. (Anita Decl. ¶ 17.)

On or about July 21, 2022, Plaintiffs tried to contact Citigroup Management regarding their loan after realizing that Plaintiffs' online portal on Citigroup's website was no longer active. (Anita Decl. ¶ 18.) It was then that Plaintiffs were informed that the servicing rights for the Loan had been transferred to Cenlar. *Id.* At that time the total amount due on the Subject Loan was approximately $1,976,508.00. (Shapero Decl. ¶ 4, Ex. C at 3.)

///

///

---

[2] The Court notes that Plaintiffs did not attach the deposition cover page or the court reporter's certification, so the exhibit is not properly authenticated. (*See* Shapero Decl., Ex. B.) At the hearing, the Court gave Plaintiffs the opportunity to refile the deposition transcript over Cenlar's objection. (*See* Suppl. Shapero Decl., Dkt. No. 95 ¶, Ex. B.) Moreover, Defendant failed to object to this exhibit in the reply, and, in fact, cited to it in support of its arguments. (*See* Def.'s Reply at 13.) As the only substantive difference is the inclusion of the cover page and court reporter's certification, all citations will be to "Crawford Dep."

On or about July 31, 2022, Plaintiffs contacted Cenlar to find more information about the loan on the Property. (Anita Decl. ¶ 19.)  Cenlar sent Plaintiffs an application email and verification that the loan had been transferred from Citigroup to Cenlar. *Id.*

On or about August 1, 2022, Cenlar provided Plaintiffs with a loan number. (Anita Decl. ¶ 20.)  Plaintiffs continued to try to contact Cenlar to receive more information regarding the Subject Loan. *Id.*  Plaintiffs were advised by a Cenlar representative to look out for "important papers" that would be sent in the mail from Cenlar. *Id.*

On or about October 3, 2022, Plaintiffs received a loan statement in the mail from Cenlar detailing the loan amount on the account. (Anita Decl. ¶ 21.)  The loan statement also contained contact information for payment and further correspondence with the bank. *Id.*  Plaintiffs attempted to call Defendant Cenlar, but the number provided to Plaintiffs went to a voicemail box rather than to a representative. *Id.*

From August 2, 2023, to January 4, 2024, Plaintiff sent monthly letters to the provided P.O. Box requesting a loan modification application and a single point of contact to assist with applying for a foreclosure prevention alternative. (Anita Decl. ¶ 22.)  On or around October 29, 2023, Plaintiffs submitted a facially complete Loan Modification Application, which was then submitted to an underwriter at Cenlar. (Crawford Dep. at 33-35.)  The underwriter thereafter requested additional documents, but that request was sent to the address for Cardoza Law Offices and was returned as undeliverable. *Id.*  As such, Plaintiffs' application was never considered. *Id.*

On or about December 26, 2023, a Notice of Trustee's Sale was recorded against the Subject Property. (Vernitsky Decl. ¶ 21, Ex. 12.)  On or about January 3, 2024, Plaintiffs received a notice posted on the front door of the Property regarding a Trustee Sale scheduled for February 12, 2024. (Anita Decl. ¶ 24.)

### B.    Procedural Background

On January 24, 2024, Plaintiffs filed the instant action in Contra Costa County Superior Court.  On March 20, 2024, Defendant Cenlar removed this action to federal court. (Dkt. No. 1.)

In connection with the instant lawsuit, Plaintiffs submitted a Loan Modification Application, but the total amount due on the Loan was approximately $2,226,710.72, and

Plaintiffs were denied a modification based on their debt-to-income ratio. (Anita Decl. ¶ 26, Ex. A.[3])

On March 20, 2025, the Court dismissed the first cause of action with leave to amend and the second cause of action with prejudice. (3/20/25 Order, Dkt. No. 59 at 9.)  The first cause of action for violation of the California Homeowner Bill of Rights was later dismissed with prejudice. (Dkt. No. 69.)  Thus, only the third and fourth causes of action remain. (*See* First Am. Compl., "FAC," Dkt. No. 61.)

On February 26, 2026, Defendant Cenlar filed a motion for summary judgment. (Def.'s Mot., Dkt. No. 80.)  On March 12, 2026, Plaintiffs filed an administrative motion requesting an extension of time to file their opposition, which was granted. (Dkt. Nos. 84, 91.)  On March 16, 2026, Plaintiffs filed their opposition. (Pls.' Opp'n, Dkt. No. 88.)  On March 23, 2026, Defendant filed a reply. (Def.'s Reply, Dkt. No. 92.)

On April 6, 2026, Plaintiffs filed a supplemental declaration to correct the previously unauthenticated deposition transcript of Raymond Crawford. (Suppl. Decl. of Sarah Shapero, "Suppl. Shapero Decl.," Dkt. No. 95.)

## II.    LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses

---

[3] The supporting declaration indicates that the loan modification was sought on July 8, 2024, but the denial attached as Exhibit A is dated June 17, 2024. At the hearing, Plaintiffs indicated that the date in Mrs. Khurana's declaration was a typo.

that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III.   DISCUSSION

The only remaining claims are the third and fourth causes of action. (*See* Dkt. Nos. 59 & 69.) The Court will address each claim below.

United States District Court
Northern District of California

**A.     12 C.F.R. § 1024.33 and California Civil Code § 2937**

The third cause of action is for violation of 12 C.F.R. § 1024.33 and California Civil Code § 2937 for failure to timely provide notice of the transfer of the loan servicing.

**i.     Standing**

As a threshold matter, Defendant argues that Plaintiffs have failed to establish that they have Article III standing. (Def.'s Mot. at 13.) "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Cenlar argues that the evidence shows that Plaintiffs have not suffered any concrete harm that can be traceable to Cenlar's conduct. (Def.'s Mot. at 14.)

**a.     Injury in fact**

Various intangible harms can be sufficiently concrete to constitute an injury-in-fact, including reputational harms, disclosure of private information, and intrusion upon seclusion. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021). Defendant cites to Plaintiffs' interrogatory responses, in which they limited their damages suffered to "loss of reputation and goodwill, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression." (Def.'s Mot. at 14 (citing Pls.' Suppl. Resp. to Interrogatories, Resp. No. 23, Wong Decl., ¶¶ 9-10, Exs. 19 & 20.) Despite their interrogatory responses, Plaintiffs do not argue in their opposition that they suffered any intangible harm let alone provide any evidence be it in the form of a declaration, testimony, or other exhibit.

For the first time in opposition, Plaintiffs argue that were economically damaged because they would have applied for a loan modification in 2019 had they known that their servicing rights had been transferred to Cenlar. (Pls.' Opp'n at 10; Anita Decl. ¶ 27.)  Plaintiffs contend that they

United States District Court
Northern District of California

did not apply for a loan modification until 2022 because they were actively engaged in litigation against CitiMortgage at that time. (Anita Decl. ¶ 27.)  At the hearing, Plaintiff conceded that there was no guarantee that they would have received a loan modification had they applied in 2019, but that they would have had a better chance due to a lower debt-to-income ratio. (*See* Pls.' Opp'n at 10.)  The Court notes that in June 2019, the accelerated amount due on the Subject Loan was $1,875,028.11, which increased to $1,976,508.15 as of July 2022. (*See* Shapero Decl. ¶ 4, Ex. C at CEN 000001, CEN 000075.)  That is a difference of $101,480.04. *See id.*  In denying the 2024 loan modification application, Cenlar explained multiple grounds for the denial, including that "[t]he modified payment will cause your debt-to-income ratio to exceed the targeted debt-to-income ratio per program guidelines." (Anita Decl., Ex. A.)  While Plaintiff cannot possibly know if they would have been approved for a modification three years earlier, they do not even attempt to explain how they could have satisfied the debt-to-income ratio guidelines had they applied in 2019.  Indeed, Plaintiffs do not address their income at all in connection with this argument or anywhere else in their opposition beyond vague claims of a positive change in financial circumstances in 2016. (*See* Pls.' Opp'n at 5; Anita Decl. ¶ 11.)  Plaintiffs further argue that even if they had been denied a loan modification in 2019, the combination of the lower amount of debt owed and lower interest rates would have created an opportunity to refinance the loan. (Pls.' Opp'n at 10.)[4]  Plaintiffs cite to no evidence in support of the refinancing argument, nor do they attempt to reconcile the lost opportunity theory with their prior discovery responses limiting their damages to intangible harms.  At the hearing, Plaintiffs confirmed that the lost opportunity in 2019 was the only source of damages that they are now claiming.

In support of this new theory, Mrs. Khurana's declaration states that Plaintiffs would have applied for a loan modification or attempted to refinance the property in 2019 had they had notice of the transfer in servicing. (Anita Decl. ¶ 27.)  Conclusory or speculative testimony in affidavits are generally insufficient to raise genuine issues of fact to defeat summary judgment. *See*

---

[4] The Court notes that Plaintiffs could have pursued refinancing at anytime during this time period without knowing which entity was servicing their loan. There is no evidence indicating any attempts to refinance the Subject Loan.

*Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  "Similarly, 'uncorroborated and self-serving' testimony that 'flatly contradicts [ ] prior sworn statements' cannot create a genuine issue of fact." *Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 12-CV-01927-WHO, 2013 WL 12440999, at *5 (N.D. Cal. Nov. 19, 2013) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).  Plaintiffs' attempt to use Mrs. Khurana's declaration as evidence of the lost opportunity to defeat summary judgment suffers from at least two fatal flaws.  First, Mrs. Khurana's declaration is contradicted by Plaintiffs' discovery responses which only specified intangible injuries, which cannot create a triable issue of fact. *See Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir. 1996) (deposition testimony found insufficient to create triable issue of fact because it contradicted statements on disability claim forms claiming total disability).  Any evidence in support of the lost opportunity theory is also subject to preclusion under Federal of Civil Procedure 37. *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 556–57 (N.D. Cal. 2009) (plaintiffs' failure to inform defendants they were seeking different category of damages for more than two years without "substantial justification" mandated preclusion under Rule 37).

Second, as Cenlar argues in reply, Plaintiffs have not provided any credible evidence that their income could have qualified them for a modification, rendering the assertion entirely conclusory and speculative. (Def.'s Reply at 8.)  At the hearing, Plaintiffs argued that their repeated attempts to contact Cenlar once notified of the servicing transfer indicates that they would have applied for a loan modification in 2019, and that they had a better chance of obtaining a modification. As discussed above, however, Plaintiffs have made no attempt to explain how the Court could reasonably infer that their debt-to-income ratio in 2019 could have resulted in obtaining a loan modification.  In the absence of a reasonable inference that Plaintiffs would have been granted a loan modification in 2019, they were in no worse position when they applied three years later. Moreover, the fact that Plaintiffs did not remit a single loan payment since 2009 and did not attempt to even access their online loan account until July 21, 2022 makes it even less likely that Plaintiffs would have applied for a loan modification prior to the conclusion of the CitiMortgage litigation. (*See* Anita Decl. ¶ 18.)  For all these reasons, the Court finds that

United States District Court
Northern District of California

Paragraph 27 of Mrs. Khurana's declaration is both speculative and entirely self-serving. Since a self-serving declaration cannot be used to create a triable issue of fact, the Court finds that Mrs. Khurana's declaration is not enough to create a genuine factual dispute necessary to successfully oppose summary judgment. Even if Mrs. Khurana's declaration was not found to be speculative, that Plaintiffs never raised the lost opportunity theory in response to multiple discovery devices is separately fatal.

Thus, the Court finds that Plaintiffs' failure to point to any evidence to support a reasonable inference that they sustained an injury-in-fact negates Article III standing and requires that summary judgment be granted in Cenlar's favor.

### b. Whether the injury was fairly traceable to Cenlar's conduct.

Defendant argues that even if even if Plaintiffs could provide evidence of injury, they cannot show that they suffered due to Cenlar's purported failure to give notice of the servicing transfer in 2019. (Def.'s Mot. at 15.)  Specifically, Defendant points out that it is undisputed that Plaintiffs have been past due on the Subject Loan since June 1, 2009, which is nearly 17 years ago and almost 10 years before Cenlar even started servicing the Subject Loan. *Id.* (citing Vernitsky Decl. ¶ 14, 18, 24; Wong Decl., ¶¶ 7-10, 11; Anita Dep. at 91:16-19; Pls.' Suppl. Resp. to Interrogatory Resp. No. 18, Wong Decl. ¶ 10, Ex. 20; Pls.' Resp. to Req. for Admis. Nos. 14, 15, 16, 17, Wong Decl. ¶¶ 7-8, Ex. 17-18.)  As a result, Cenlar argues that "whatever alleged damages Plaintiffs contend they suffered would have been caused by their not making payments on the Subject Loan, not due to any acts or omissions of Cenlar." (Def.'s Mot. at 15.)

The only argument Plaintiffs raise in response is the lost opportunity to either modify or refinance the loan discussed above, which is entirely speculative and flatly contradicts their discovery responses, such that it cannot create a genuine factual dispute.  Even if Plaintiffs provided evidence to support the existence of the intangible harms vaguely described in their interrogatory responses, there would be no way to separate that injury from the same intangible harms suffered from not paying their mortgage for the past 17 years, including the almost-decade before servicing was transferred to Cenlar.

Thus, the Court finds that Plaintiffs lack Article III standing and summary judgment must

be granted on that basis.

### ii.    RESPA[5]

While Plaintiffs lack Article III standing, the Court will still address the claims on the merits.  In the alternative, Defendant argues that the evidence shows that they complied with RESPA. (Def.'s Mot. at 16.)  "The Real Estate Settlement Procedures Act ("RESPA") provides an action for damages against mortgage-loan servicers who fail to respond to certain types of inquiries from borrowers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 663 (9th Cir. 2012). RESPA's notification provision provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1).

Regulation X (24 C.F.R. § 3500.1 et seq.) was promulgated by the U.S. Department of Housing and Urban Development ("HUD") as the implementing regulation for RESPA. *Wanger v. EMC Mortg. Corp.*, 103 Cal. App. 4th 1125, 1129 (2002).  "Regulation X provides that 'each transferor servicer and transferee servicer of any mortgage servicing loan *shall deliver* to the borrower a written Notice of Transfer, containing' the required information about the servicer and the transfer." *Id.* at 1130 (quoting 24 C.F.R. § 3500.21(d)(1)(i) (2002) (emphasis in original)).

Additionally, to prevail on a RESPA claim, a plaintiff must establish a causal link between the alleged damages and Defendant's alleged wrongful conduct. "12 U.S.C. § 2605(f)(1)(A) states that any injury must be 'a result of the failure' to comply with RESPA." *Wilde v. Select Portfolio Servicing, Inc.*, No. 20-CV-06863-SVK, 2021 WL 6062869, at *4 (N.D. Cal. Feb. 26, 2021).  In sum, a plaintiff must "point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA." *Allen v. United Fin. Mortg. Corp.*, No. 09-2507 SC, 2010 WL 1135787, at *5 (N.D. Cal. Mar. 22, 2010) (dismissing plaintiff's RESPA claim where he alleged that he suffered damages of falling behind on his mortgage payments, negative credit impact, and emotional distress, but failed to allege the causal relationship of the damages to

---

[5] For the purposes of summary judgment, the Court will construe Plaintiff's third cause of action as arising under 12 U.S.C. § 2614, rather than the promulgated regulations that include 12 C.F.R. § 1024.33.

RESPA violations).

Even if Plaintiffs had Article III standing and the claim was considered timely,[6] the RESPA claim fails on the merits for at least two reasons.

a.   Adequacy of Notice

First, the notice was adequate.  On March 15, 2019, Cenlar and CitiMortgage sent a notice by first-class mail informing Plaintiffs that, as of April 1, 2019, their loan servicing was transferred to Cenlar. (Vernitsky Decl. ¶ 17, Ex. 8.)  Thus, the mailing occurred at least 15 days before the effective date of the transfer in compliance with 12 C.F.R. § 1024.33. Plaintiffs did not receive it, however, because Plaintiffs transmitted a signed Special Power of Attorney ("POA") to CitiMortgage (the prior servicer) via fax transmission on September 29, 2009 informing CitiMortage that all notices should be mailed to the Cardoza Law Firm. (Vernitsky Decl. ¶¶ 9-10, Ex. 5.)

In opposition, while Plaintiffs acknowledge that the notice of servicing transfer was sent to the address for Cardoza Law Firm, they argue that Cenlar was under an obligation to exercise reasonable diligence in determining their correct address once the notice was returned as undeliverable. (*See* Pls.' Opp'n at 15.)  Plaintiffs cite *Wanger v. EMC Mortg. Corp.*, for the proposition that, to comply with RESPA, "a servicer must exercise reasonable care and diligence in determining the correct address of the borrower when mailing a notice of transfer. 103 Cal. App. 4th 1125, 1135 (2002).  As such, Plaintiffs contend that Cenlar should have attempted to call them after the notice of transfer was returned as undeliverable or sent a copy of the notice to the Property address. (Pls.' Opp'n at 6.)

In reply, Cenlar argues that its corporate witness, Raymond Crawford, explained at his deposition that, due to Plaintiffs' pending lawsuit against CitiMortage, there was a litigation hold on the account which did not end until July 26, 2023. (Def.'s Reply at 13 (citing Crawford Dep. at 31:2-13.)  After the litigation hold ended, Cenlar attempted to call Plaintiffs. *Id.*

Additionally, Cenlar argues that *Rodriguez v. Countrywide Homes*, 668 F. Supp. 2d 1239

---

[6] The Court need not address Defendant's argument that it is time-barred by the three-year statute of limitations. (Def.'s Mot. at 16.)

14

(E.D. Cal. 2009) is instructive and is factually distinct from *Wanger*. (Def.'s Reply at 10.)  In *Rodriguez,* the district court noted that it was clearly distinguished from *Wanger* case, which involved a plaintiff who sent her lender a letter with a new mailing address, but the lender still sent the notice of transfer to the old address. *Rodriguez,* 668 F. Supp. 2d at 1247 (citing *Wanger,* 103 Cal. App. 4th at 1135).  Thus, the discussion of duty in *Wanger* "arose in a context where there was reason to believe that the lender *should have known* of the plaintiff's address change because of her letter." *Rodriguez*, 668 F. Supp. 2d at 1247 (emphasis in original).

The Court finds the facts in *Rodriguez* much more analogous to the instant case, and persuasive in its reasoning.  In *Rodriguez,* Countrywide sent the plaintiff borrowers a "Good Bye Letter" at their property address, which was their last address of record. *Id.* at 1243.  The "Good Bye Letter" informed the borrowers that, effective October 1, 2006, a new servicer would be servicing the loan, but after the letter was mailed, it was returned to Countrywide as undeliverable. *Id.* The borrowers never expressly requested Countrywide to change their mailing address from the property address to the P.O. Box address, even though their deed of trust specified that if a borrower wants the mailing address to be changed, the borrower must notify the lender in writing. *Id.* at 1242-43.  The district court found that money orders or other documents listing the plaintiffs' P.O. Box was insufficient to impart knowledge that the mailing address had changed. *Id.* at 1247.  In rejecting the plaintiffs' argument that Countrywide should have used reasonable diligence to search for their address, the district court found that:

> To impose such a duty … ignores the straightforward language of Regulation X and would require the lender to undertake a detailed investigation where the borrowers failed to abide by their responsibilities to (1) ensure that the documents they signed under penalty of perjury were accurate; and (2) abide by the lender's policies. Neither the specific language of RESPA nor any reasonable interpretation requires such a result.

*Id.*  Based on the foregoing facts, the Court granted Countrywide's motion for summary judgment because there was no dispute that the plaintiffs provided Countrywide with only the property address as their mailing address, they did not inform Countrywide of a change in address, and Countrywide sent the "Good Bye Letter" to the property address. *Id.* at 1245-47.

The instant case is even more compelling than *Rodriguez*, because it is undisputed that

Plaintiffs signed a Special Power of Attorney instructing that all future notices pertaining to the Subject Loan be sent to the Cardoza Law Offices. (Vernitsky Decl. ¶¶ 9-10, Ex. 5.)  The cover letter instructed CitiMortgage not to "contact our client in any way from this point forward." *Id.* After receiving the fax transmission, on September 30, 2009, CitiMortgage sent a letter to Plaintiffs, c/o the Cardoza Law Offices, notifying them that pursuant to Plaintiffs' instructions, CitiMortgage had updated Plaintiffs' mailing address to the Cardoza Law Offices' address. (Vernitsky Decl. ¶ 11, Ex. 6.)  Plaintiffs were advised that the Special Power of Attorney authorization would remain in effect until expressly revoked in writing by Plaintiffs. *Id.* CitiMortgage's letter stated that to revoke the Special Power of Attorney, CitiMortgage must receive Plaintiffs' written signed notification, which may be mailed or faxed to the specific address or fax number referenced in CitiMortgage's September 29, 2009 letter. *Id.* It is undisputed that, to date, Plaintiffs have never provided CitiMortgage or Cenlar with any written signed notification to either revoke the Special Power of Attorney or change the mailing address to a different address. (Vernitsky Decl. ¶ 12.)

Finally, to the extent that Plaintiffs may argue that Cenlar did not follow its internal policies regarding contacting borrowers whose communications are returned undeliverable, the Court finds that argument unavailing.  The *Rodriguez* court also considered the argument that Countrywide failed to follow its internal policies and procedures and found it unavailing on the grounds that "Countrywide'[s] internal policies are distinct from the RESPA requirements and are irrelevant to the RESPA analysis." 668 F. Supp. 2d at 1247.  The same is true here.  Indeed, the Special Power of Attorney instructed Cenlar to send all correspondence through the Cardoza Law Offices, and it was never revoked, so Cenlar satisfied its obligation under RESPA by sending the notice to the address it had on file, which the Court notes, was even later updated after the Cardoza Law Offices moved. (*See* Vernitsky Decl. ¶ 13, n. 1.)  The fact that Plaintiffs did not receive any mortgage statements or notices from CitiMortgage or Cenlar for more than 10 years is of no fault of Cenlar, and Cenlar was under no obligation to undertake an investigation to determine whether Plaintiffs' address had changed.

Accordingly, the Court finds that Plaintiffs have failed to provide any evidence to support

a reasonable inference that the notice of transfer failed to comply with RESPA.

b. <u>No causal link</u>

Second, Plaintiffs provide no evidence to support that there is a causal link between any damages—tangible or intangible— and the alleged RESPA violation. (*See* Def.'s Mot. at 15, 20.)[7] There is no dispute that Plaintiffs have not made a mortgage payment since 2009, and Plaintiffs' contention that they would have applied for a loan modification in 2019 had they known is merely speculative, only supported by a self-serving declaration, and contradicted by Plaintiffs' sworn interrogatory responses. *See* discussion, *supra,* Part III.A.i.a.

Accordingly, even if Plaintiffs had Article III standing, Cenlar would be entitled to summary judgment on the RESPA claim, because there is no evidence to create a reasonable inference that Defendant failed to comply with the notice requirement.

### iii. California Civil Code § 2937

Defendant argues that Civil Code § 2937 is expressly preempted by RESPA. (Def.'s Mot. at 23.)  RESPA provides that compliance with its rules preempts "[a]ny State law requiring notice to the borrower at the time of application or at the time of transfer of servicing of the loan is preempted, and there shall be no additional borrower disclosure requirements." 12 C.F.R. § 1024.33(d).  Since Cenlar complied with RESPA's notice requirement in 12 C.F.R. § 1024.33, it has also complied with § 2937.

Accordingly, the motion for summary judgment is granted as to the third cause of action.

### B. UCL Claim

The fourth cause of action is for violation of Business and Professions Code § 17200. While Plaintiffs fail to address this claim in their opposition, the parties previously agreed that this claim was derivative in nature. (*See* 3/20/25 Order at 8.)  A derivative UCL claim must only be dismissed if the underlying claims are also subject to dismissal. *See Avila v. Bank of Am.*, No. 17-

---

[7] The Court notes that Defendant's argument that pecuniary damages are necessary to maintain a statutory RESPA claim (*see* Def.'s Mot. at 20) is not well taken, as there is a recognized split among the district courts, which remains unresolved by the Ninth Circuit. *See Wilde v. Select Portfolio Servicing, Inc.*, No. 20-CV-06863-SVK, 2021 WL 6062869, at *4 (N.D. Cal. Feb. 26, 2021).

United States District Court<br>Northern District of California

CV-00222-HSG, 2017 WL 4168534, at *5 (N.D. Cal. Sept. 20, 2017) (dismissing UCL claim to the extent it is derivative of other claim dismissed in same order). Thus, Cenlar is entitled to summary judgment due to the dismissal of the third cause of action.

Alternatively, summary judgment is also proper due to Plaintiffs' failure to provide evidence of economic damages. (*See* Def.'s Mot. at 23.)  In order to establish standing for the UCL Claim, plaintiffs must show that they personally lost money or property "as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011).  Under California law:

> [t]here are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Kwikset,* 51 Cal. 4th at 323.  As discussed above, Plaintiffs provide no evidence to support a reasonable inference that they sustained economic damages. *See* discussion, *supra,* Part III.A.i.a. In the Court's March 20, 2025 Order on the motion to dismiss, the Court acknowledged the inherent difficulty Plaintiffs may have in showing that any economic damages could be attributed to Cenlar's conduct:

> Given the several yearslong delinquency prior to Cenlar becoming their servicer, to ultimately prevail, Plaintiffs will need to explain how they were injured by Cenlar's actions rather than by not making mortgage payments for 10+ years. The issue of causation, however, is not to be decided at the pleadings stage.

(3/20/25 Order at 9, n. 2.)  Despite this forewarning, Plaintiffs fail to provide any evidence that they sustained economic damages beyond Mrs. Khurana's self-serving declaration. *See* discussion, *supra,* Part III.A.i.a.

Accordingly, the Court finds that summary judgment is separately warranted on the UCL claim based on Plaintiffs' failure to raise a genuine factual dispute regarding economic damages.

## IV.    CONCLUSION

For the reasons set forth above, Defendant Cenlar FSB's motion for summary judgment is GRANTED.

18

As the parties agreed at the hearing that Defendant Clear Recon is a non-monetary defendant against whom no claims are alleged, the Clerk is directed to close the case, and the Court will enter judgment separately in favor of Cenlar FSB.

IT IS SO ORDERED.

Dated: April 27, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

19